NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-555

IN THE MATTER OF M.S.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The respondent minor (M.S.) appeals from a ninety-day commitment order entered pursuant to G. L. c. 123, § 35, which sets forth the requirements and procedures by which an individual may be committed involuntarily for treatment of a substance use disorder. On appeal, M.S. contends that there was insufficient evidence to prove he had a substance use disorder and, relatedly, that the judge erred in relying on hearsay evidence without making the required findings concerning the reliability of the hearsay.[1] We agree, and therefore reverse the

_____

[1] M.S. also argues that (1) the evidence was insufficient to support a finding of a likelihood of serious harm, (2) there was an insufficient nexus between a substance use disorder and a likelihood of serious harm, and (3) there were less restrictive alternatives available. Because we conclude that the judge erred in relying on the hearsay evidence and in finding a substance use disorder, we do not reach these issues.

finding as to the substance use disorder and vacate the order of commitment.

Background.  On April 10, 2025, M.S.'s mother petitioned the Norfolk County Division of the Juvenile Court Department to have her son, who was seventeen years old, committed under G. L. c. 123, § 35, for "refus[ing] treatment for his drug addiction" and use of "a very dangerous [and] popular drug" known as "lean."[2]  In support of the petition, M.S.'s mother submitted an affidavit in which she asserted that M.S. uses marijuana "more than once a day" and lean, though she did not state how often he uses the latter.  She also averred that M.S. had a "psychotic event" on April 8, 2025, in which he was "screaming, crying, asking for money" and "afraid that someone was going to hurt him."  M.S. reportedly punched and pushed his father against a wall, and told his parents that "[they] would 'see'" if they did not give him money.  When M.S. came home the following night, he was "very agitated"; he again asked for money and stated, "I don't want to live here."  A mobile crisis unit arrived and called the police.  According to M.S.'s mother, it took two hours to get M.S. to leave the house before being taken to the

_____

[2] At the commitment hearing, Dr. Lauren Persing testified that lean "is a substance that consists of many different components including codeine, often hard candy, soda, and occasionally alcohol."

2

emergency room at Newton-Wellesley Hospital.  M.S.'s mother further reported that her son has attention deficit hyperactivity disorder (ADHD) and anxiety.

Before the commitment hearing commenced, the court assigned a court clinician, Dr. Lauren Persing, to evaluate whether M.S. met the criteria for commitment.  M.S. declined to submit to an evaluation, but Dr. Persing spoke with his mother, probation officer, Department of Children and Families (department) worker, and a social worker at Newton-Wellesley Hospital.  Dr. Persing also reviewed records, including Newton-Wellesley Hospital records dated April 9 and 10, 2025.

During the hearing, Dr. Persing described the records she reviewed and the conversations she had with others about M.S.'s substance use and behavior; the records were not admitted in evidence.  She testified that, based on information provided by M.S.'s mother, the department, and Newton-Wellesley Hospital, M.S.'s daily cannabis use began in 2023 and had increased in the past year.  Dr. Persing stated that M.S. had received a cannabis use disorder diagnosis from Boston Children's Hospital and "tested positive for cannabis on many occasions," and that Newton-Wellesley Hospital had characterized his cannabis use as "abuse."  According to Dr. Persing, the hospital records showed that M.S did not test positive for opiates during a toxicology

3

screen but "indicated concerns for lean abuse."  Dr. Persing
further testified that the department and M.S.'s mother shared
with her that M.S. told them he uses lean, and that M.S.'s
mother overheard her son say on the telephone that "he needs
rock or lean."[3]  Additionally, Dr. Persing testified to concerns
about M.S.'s use of other substances given his irritability,
anger, agitation, low appetite, restlessness, and other possible
signs of withdrawal.  Specifically, she pointed to M.S.'s need
for physical restraints while at Newton-Wellesley Hospital and
his "engage[ment] in property damage at home," as reported by
police.  Further, Dr. Persing testified to M.S.'s mother's
concerns about him driving under the influence, selling
household items to buy drugs, and his affiliation with a gang
that potentially provides him drugs.

Moreover, Dr. Persing testified about M.S.'s behavior more
generally, reiterating concerns shared with her about M.S.'s
alleged suicidal comments and self-harm, including headbanging,
and describing M.S.'s mother's description of the incident
leading to M.S.'s hospitalization.  Dr. Persing also stated that
M.S. is "very angry with his family" and "does not want to be

---

[3] Neither the department nor M.S.'s mother could identify a specific time in which M.S. made such assertions.

home with his family" because he told his parents that he was sexually abused, and they did not believe him.

According to Dr. Persing, M.S. met the criteria for involuntary commitment for substance use treatment because his behavior differed from typical adolescent misbehavior and could be attributed, at least in part, to substance use. Dr. Persing based this opinion on M.S.'s refusal to engage in outpatient services or take prescribed medication, participate in therapy, or comply with substance use treatment.

M.S.'s mother also testified during the hearing to her son's drug use and behavior. She stated that M.S. smokes marijuana at home, but that she has neither seen him consume lean nor observed any lean-related paraphernalia in his room. M.S.'s mother acknowledged that her son has experienced trauma, and explained that he has moved from school to school. She did not testify to the incident that led to his hospitalization at Newton-Wellesley.

Based on the evidence presented at the hearing, the judge ordered M.S. committed to Motivating Youth Recovery in Worcester.

Discussion. M.S. contends that there was insufficient evidence to prove he had a substance use disorder and that any such evidence was based on hearsay for which the judge failed to

5

make the required findings of reliability.  To commit an individual under G. L. c. 123, § 35, a judge must first determine, by clear and convincing evidence, that the individual has an alcohol or substance use disorder.  See Matter of a Minor, 484 Mass. 295, 296 (2020).  Here, the determination that M.S. had a substance use disorder was based on hearsay from multiple sources, including M.S.'s mother and medical records not admitted in evidence.  See Matter of J.P., 486 Mass. 117, 122 (2020).  A judge may rely on hearsay evidence in commitment hearings only if the judge "make[s] clear, in writing or on the record, what specific indica of reliability led him or her to conclude that the hearsay evidence . . . [wa]s substantially reliable" to satisfy due process.  Matter of a Minor, supra at 308.  This requirement is "critical, particularly in light of the clear and convincing evidence standard of proof required" for an involuntary commitment.  Matter of G.P., 473 Mass. 112, 122 (2015), abrogated on other grounds by Matter of a Minor, supra at 299 n.1.

Although the judge relied on hearsay to conclude that M.S. had a substance use disorder, the judge did not make any findings on the reliability of this information.  Instead, the judge stated, "I credit the testimony of Dr. Persing.  I credit the testimony of his mother.  The hearsay testimony that I did

6

hear has been corroborated by other sources." While the "requirement that a judge make explicit" findings about the reliability of any hearsay relied on "need not impose a significant burden on the hearing judge," it does require more than what the judge did here. Matter of a Minor, 484 Mass. at 308.

Moreover, even if the hearsay statements were appropriately considered by the judge as sufficiently reliable, the evidence failed to establish that M.S. had a substance use disorder. A substance use disorder is "marked by 'chronic or habitual consumption' to the extent that using the substance either 'substantially injures' the individual's health or 'substantially interferes with the person's social or economic functioning,' or results in the individual having 'lost the power of self-control over the use' of the substance." Matter of a Minor, 484 Mass. at 302, quoting G. L. c. 123, § 35.

The fact that M.S. used marijuana daily, received an unsubstantiated cannabis use disorder diagnosis, and tested positive for cannabis on various occasions does not establish that he had a substance use disorder. Compare Matter of a Minor, 484 Mass. at 303 (insufficient evidence of alcohol use disorder based on mother's finding of open beer bottles in teenager's room multiple times), with Matter of J.P., 494 Mass.

7

654, 669 (2024) (substance use disorder properly established where evidence showed minor had longstanding history of substance use, was intoxicated at school on multiple occasions, and tested positive for fentanyl multiple times in one month). What is more, "a finding that a respondent has a substance use disorder under § 35 requires supporting clinical evidence in order to comply with the requirements of substantive due process." Matter of J.P., supra at 663. See id. at 665 ("Clinical evidence is particularly relevant in a § 35 commitment hearing for a juvenile, where 'a judge is required to assess an individual's judgment, self-control, and social functioning, precisely those areas of juvenile brains that are recognized as underdeveloped'" [citation omitted]). No such evidence was submitted here. Because M.S. refused to meet with Dr. Persing, she could not conduct a complete "diagnostic assessment" as part of "an in-depth clinical process" and instead relied on information conveyed to her by M.S.'s mother and learned through medical records (citation omitted). Id.

While M.S.'s cannabis usage was understandably concerning given his age, there was insufficient evidence that he had lost the power of self-control over his cannabis use or that his consumption substantially threatened his health or impaired his social functioning. Neither M.S.'s behavioral issues nor the

incident that led to his hospitalization were directly attributable on this record to substance use.  As for M.S.'s alleged use of lean, nothing in the record indicates that he used lean outside of his mother's testimony about overhearing a telephone call in which he purportedly referenced lean and a hospital record noting a concern with lean use.

Conclusion.  The finding of a substance use disorder is reversed, and the order of commitment is vacated and set aside. The matter is remanded to the Juvenile Court for entry of an order consistent with this memorandum and order.

So ordered.

By the Court (Rubin, Sacks &
   Smyth, JJ.[4]),

Clerk

Entered:  July 15, 2026.

---

[4] The panelists are listed in order of seniority.